UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARREN JOHNSON,

                    Plaintiff,                Civil Action No. 22-10540

v.                                        Nancy G. Edmunds
                                        United States District Judge

ELIZABETH AUSTIN, *et al.*,

                                        David R. Grand
                    Defendants.        United States Magistrate Judge

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 38), AND TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 50, 52)

*Pro se* plaintiff Darren Johnson ("Johnson"), an incarcerated person, brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983, against defendants Kristen Austin, N.P., ("Austin") and Brian Stricklin, R.N., ("Stricklin") based on their alleged denial of medical care for his chronic back condition, in violation of the Eighth Amendment. (ECF No. 1; *see also* ECF No. 6[1]). The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 13).

Before the Court are three dispositive motions: (1) Johnson's motion for partial summary judgment (ECF No. 38); (2) Austin's motion for summary judgment (ECF No.

_____

[1] On May 20, 2022, the Honorable Stephanie Dawkins Davis screened the complaint pursuant to 28 U.S.C. § 1915(g) and dismissed all of Johnson's other claims except for his Eighth Amendment claims against defendants Austin and Stricklin in their individual capacities. Thus, the Court will limit its discussion of the facts to only the remaining claims.

50); and (3) Stricklin's motion for summary judgment (ECF No. 52).[2]  These motions have all been fully briefed.  (ECF Nos. 40, 44, 49, 53 (related to Johnson's motion); Nos. 54, 56 (related to Austin's motion); and Nos. 55, 57, 60 (related to Stricklin's motion)).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

# I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Johnson's Motion for Partial Summary Judgment **(ECF No. 38)** be **DENIED**, and that Austin's Motion for Summary Judgment **(ECF No. 50)** and Stricklin's Motion for Summary Judgment **(ECF No. 52)** be **GRANTED**.

# II.   REPORT

## A.    Background

### i.    Johnson's Complaint

Johnson, who is a prisoner currently confined at the Michigan Department of Corrections' ("MDOC") Kinross Correctional Facility, brings this civil rights action based on alleged violations of his Eight Amendment rights during the time he was incarcerated

---

[2] Also before the Court are Austin's Motion to Strike (ECF No. 58), and Stricklin's Motion to Strike (ECF No. 61), which argue that Johnson filed unauthorized sur-replies.  The Court has reviewed these challenged filings, but finds that because it is recommending that summary judgment be granted for Austin and Stricklin, their motions to strike are moot.  Accordingly, Austin's motion to strike **(ECF No. 58)**, and Stricklin's motion to strike **(ECF No. 61)** are **DENIED AS MOOT**.

at the MDOC's G. Robert Cotton Correctional Facility ("JCF"). In his complaint, Johnson alleges that, on October 24, 2021[3], Austin and Stricklin were deliberately indifferent to his "serious medical need of chronic back pain" when they "rejected a bottom bunk detail without any evaluation, treatment, or examination" to determine whether he met the criteria for such accommodation. (ECF No. 1, PageID.8). He alleges that, instead, he was "forced to sleep on the top bunk," and that his "back went out" because he had to "jump and climb on the top bunk," which caused him to "fall and collapse, hitting his head, elbow, shoulder, leg, knee, [and] hurting his back even more . . . ." (*Id.*). As a result, he claims that he now experiences "excruciating pain," his "back locks up causing [him] to walk with [a] limp," and that it is "very difficult for [him] to sit down and stand straight up without great pain." (*Id.*).

Based on the above allegations, Johnson sues Austin and Stricklin for Eighth Amendment deliberate indifference to his serious medical needs. Johnson seeks money damages, as well as injunctive relief in the form of a "permanent bottom bunk detail." (*Id.*, PageID.9).

### ii. Summary Judgment Evidence

Primarily at issue in this case is Johnson's contention that, on October 24, 2021, Austin and Stricklin denied his requests for a bottom bunk detail despite knowing he suffered from a chronic back condition. A review of the salient MDOC medical and

---

[3] Although the complaint states the year as "2022," it appears that the parties are disputing incidents that occurred in "2021." (*See* ECF No. 53, PageID.461) (Johnson's reply brief stating "Specifically, Mr. Johnson asserts that around October 24, 2021, NP Austin and RN Brian was an[d] still is deliberate indifference [sic] to [his] serious medical need of chronic back pain.").

grievance records provides details of Johnson's chronic back condition, his encounters with Austin and Stricklin, and the events leading up to and following their denial of his requests for a bottom bunk detail.

Relevant here, the MDOC'S Medical Service Advisory Committee ("MSAC") guidelines governing "Bottom Bunk Details/Accommodations" provides certain "General Requirements" for such an accommodation – (1) seizure disorder; (2) morbid obesity; (3) "[s]ignificantly impaired mobility or function of an extremity"; (4) Prosthesis of an extremity; (5) "[s]ignificantly impaired balance"; (6) abnormality of blood clotting as a result of disease or medical therapy; (7) "[d]emonstrated inability to access top bunk due to physical condition"; (8) post multilevel laminectomy of neck or back; (9) post craniotomy; (10) neck, back, or ankle fusion; (11) moderate to complete visual impairment; (12) presence of ostomy; (13) psych medications – as well as exceptions for "Post-Operative/Special Consideration (Recent Surgeries/Procedures)." (ECF No. 38, PageID.259). The MSAC guidelines also provide that "[s]pecial accommodations for bottom bunks which are medically necessary, but outside of these guidelines, need to be submitted to the Assistant Chief Medical Officer ('ACMO')" for approval, and that "[t]hese are just guidelines; whether or not a bottom bunk is medically necessary is a decision the provider must make . . . [and] just because a prisoner may have one of these conditions, they are not necessarily required to have a bottom bunk detail." (*Id.*).

Salient MDOC grievance documents reflect that Johnson had been previously incarcerated at the Muskegon Correctional Facility ("MCF") before being transferred to JCF, where the current issues with Austin and Stricklin transpired. (ECF No. 38,

4

PageID.257).   On August 28, 2020, while still housed at MCF, Johnson was issued a two-month detail for a "temporary bottom bunk bed" by a "medical provider at MCF" that expired on October 28, 2020.   (*Id.*, PageID.257; ECF No. 40-3, PageID.307).   The temporary bottom bunk detail was "ordered (via a chart review) due to [Johnson's] history of a back injury six months prior and because he was being evaluated for thyroid cancer at that time."  (ECF No. 38, PageID.257).

Johnson was transferred from MCF to JCF sometime after August 28, 2020, and while housed at JCF on February 3, 2021, he filed a healthcare kite requesting a renewal of his bottom bunk detail.  (ECF No. 50-1, PageID.393).  He asserted that he "need[s] a bottom bunk detail" because he was "diagnosed with chronic back pain that causes [his] back to go out and cause[s] [him] to collapse and fall which is on medical file," and that he is "under imminent danger of serious physical injury" because it is "unsafe" for him to be on the "top bunk . . . due to [his] back going out."  (ECF No. 50-1, PageID.393; *see also* ECF No. 38, PageID.257).  That same day, Nigel Wyckoff, R.N., responded to his kite, stating, "Bottom bunk details can only be written by providers and for specific reasons," and that "[a] chart review by your provider has been scheduled."  (ECF No. 50-1, PageID.393).

Two days later, on February 5, 2021, Nurse Practitioner Austin performed a "Chart Review/Update" concerning Johnson's request for a bottom bunk detail, but denied the request because he currently "doesn't meet MSAC guidelines."  (*Id.*, PageID.394; *see also* ECF No. 38, PageID.257 ("The request was referred to the medical provider via chart review.  That chart review was completed on 2/5/2021 by NP Austin who determined that

[Johnson] did not meet MSAC [] guidelines for a bottom bunk at that time.  Review of subsequent documentation fails to reveal any reference to significant changes in [Johnson's] status re: his low back pain or his mobility.").

Later, on June 22, 2021, Johnson was seen in person for a clinical visit with Austin, during which Johnson "ask[ed] for [a] detail to not sit/stand for longer than 4 hours" because "he is currently working in the kitchen but has issues with [his] lower back pain that are worse with prolonged standing or sitting" and had a "fall at MCF last year [] that precipitated pain," though he had "[n]o surgeries" and remained "somewhat active."  (*Id.*, PageID.395).  Austin conducted a physical exam, which indicated that Johnson had "Active ROM [range of motion] with lower back flexion, extension, rotation and lateral bending," and "[n]egative straight leg lifts bilaterally," and she assessed Johnson with "[l]umbago with sciatica, unspecified side" that was "Current" and "Chronic."  (*Id.*).  Austin issued Johnson a medical detail for "[n]o standing or sitting for longer than 4 hours," and "[a]dvised weight loss" and "diet medication" for his lower back pain.  (*Id.*, PageID.396-97).  The treatment note does not mention any request for a bottom bunk detail, and Austin avers in her affidavit that "[a] bottom bunk detail was not discussed during this visit."  (ECF No. 50-2, PageID.423).

A few weeks later, on July 9, 2021, Johnson had a "Telemedicine" clinic visit with Ravi Yarid, D.O., during which he complained of "worsening" lower back pain.  (ECF No. 50-1, PageID.398).  Johnson was again assessed with "[l]umbago with sciatica, unspecified side," and Dr. Yarid placed a consultation request for "physical therapy" so that he could get "input for specific and improved HEP [home exercise plan]."  (*Id.*).  Dr. Yarid noted

that Johnson's active range of motion was "grossly intact with pain" and he had a "neg[ative] straight leg raise." (*Id.*).

On July 27, 2021, Johnson had a clinical visit with physical therapist Scott Weaver, during which he complained of "pain" that was "worsening" and "interfering with sleep and activities," and stated he had "pain and discomfort only along right side and no [pain] radiating down legs or numbness tingling down legs." (*Id.*, PageID.400). A physical exam reflected that Johnson's lumbar spine was "tender" with "palpation" "along right SI joint and buttock" but "motion is without pain," no restriction noted in "L-spine with [range of motion]," and his lower extremity strength was 5/5. (*Id.*). Weaver assessed Johnson with "mild right sided lower back and right sided SI joint irritation," and "instructed [him] in lower back stretches and stabilization exercises" and to follow up with a medical provider "[i]f no improvement in 4-6 weeks." (*Id.*, PageID.401). Weaver also noted that Johnson would "benefit from short term ice pack detail for 2-3 weeks." (*Id.*).

A Medical Detail Special Accommodations document dated August 29, 2021, signed by Stricklin indicates in the "Comments" section that Austin's prior issuance of a detail for "[n]o standing or sitting for longer than 4 hours" in June 2021 was still in effect at the end of August 2021. (ECF No. 38, PageID.253).

On September 27, 2021, Johnson filed a healthcare kite stating, "Chronic back pain need a bottom bunk." (ECF No. 38, PageID.254). That same day, Stricklin responded, "You do not meet MSAC requirements for a bottom bunk detail." (*Id.*).

On October 21, 2021, Johnson filed another kite, stating:

> Austin. I need a bottom bunk detail. As you are aware I am diagnosed

> with chronic back condition last time I sent a kite to you a nurse impeded and answer[red] your kite which is not proper procedure when addressing a[n] issue to a specific physician assistant.[]

(*Id.*, PageID.255).  Stricklin responded:

> Once again you do not meet MSAC requirements for a bottom bunk detail.  Medical providers (MP, PA, and MD[]) do not read or answer kites.  This is the proper procedure for answering kites.  Feel free to discuss the issue at the next appointment with your medical provider.

(*Id.*).

More than three months later, on February 12, 2022, Johnson was seen at an urgent clinic by John Salazar for "chronic back pain" that was "10/10" after he "hurt his back when getting off bed."  (ECF No. 50-1, PageID.405).  Salazar observed that Johnson had a "steady gait," he "ambulated to [the clinic]" on his own, he was "unable to perform full ROM during assessment," and he had "no pain/grimace with palpation of back."  (*Id.*).  Salazar then provided Johnson with "back stretches/exercises," "ice detail" for 4 days, over-the-counter medication, and a bottom bunk detail for 5 days.  (*Id.*, PageID.405).  Johnson's temporary "Bottom Bunk" detail expired on February 16, 2022.  (ECF No. 40-3, PageID.312).

On February 16, 2022, Johnson filed another kite, stating he needed his "bottom bunk detail extended" because he "once again previously hurt[] [his] back and is still in great pain," and that he also needs his "ice detail extended [] for [his] back."  (*Id.*, PageID.406).  The next day, Mandi Hollister, R.N., responded, "Chart reviewed to MP [medical provider]."  (*Id.*).

On February 23, 2022, Austin performed a chart review regarding Johnson's

requests for bottom bunk and ice details.  (*Id.*, PageID.407).  Austin determined that Johnson "[c]urrently has no detail for BB [bottom bunk]" and "doesn't qualify for a bottom bunk," and that he was "told during [clinical encounters] during 6/22/21 & 8/24/21 that he doesn't qualify for ice detail."  (*Id.*).  This appears to be Austin's and Stricklin's final involvement with Johnson as it relates to his Eighth Amendment claim against them.

The medical record in the ensuing months reflect that, on June 17, 2022, Johnson was seen at the clinic by Theresa Gutowksi, R.N., for complaints of "bilateral knee swelling and pain" because three days earlier he "injured his left knee playing basketball" and "his right knee hurts in compensating for [his] left knee injury." (*Id.*, PageID.408-09).  Johnson was given a 3-day supply of Tylenol and Motrin and an "ice detail for 3 days."  (*Id.*, PageID.409).

On June 29, 2022, Johnson was seen at the clinic by Luis Maduro, M.D., for a follow up regarding his knee pain.  (*Id.*, PageID.410).  He was assessed with "Chondromalacia" of his right knee, and Dr. Maduro set a plan for a "knee brace for 30 days" and a follow up appointment in 30 days for an x-ray of the knees.  (*Id.*).

On July 5, 2022, Johnson filed a kite requesting an "immediate extension on ice detail . . . for both of [his] knees."  (*Id.*, PageID.413).  Stacy Baker, L.P.N., responded that Johnson was seen by nursing and his medical provider for his knee issues, and "[t]he ice detail is for short term only and will not be extended at this time."  (*Id.*).

On July 18, 2022, Johnson filed a kite "requesting information for the MSAC requirement for a bottom bunk detail" because he had a "chronic back condition."  (*Id.*, PageID.416).  Ashley Walker, R.N. responded, "You may discuss this with your provider

9

at your upcoming MP appointment." (*Id.*).

On August 5, 2022, Johnson was seen at the clinic by Linda Lovelace, R.N., for pain in his left shoulder "for about one month" after "he repeatedly bumped [his] left shoulder into another inmate while playing basketball" and has since had "difficulty moving [his] arm outward and pain[] at night when he sleeps on it." (*Id.*, PageID.417). (*Id.*). Nurse Lovelace gave Johnson a "few packets" of Tylenol and Ibuprofen, and scheduled a follow-up in one-to-two weeks. (*Id.*).

On August 15, 2022, Johnson filed a kite, again requesting information on the MSAC guidelines for a bottom bunk. (*Id.*, PageID.420). The next day, Cherri Brown, R.N., responded that MSAC "information can be found in the Library." (*Id.*).

On September 13, 2022, Johnson filed a kite, "[r]equesting immediate permanent BB [bottom bunk] detail due to my diagnosed chronic back condition." (*Id.*, PageID.421). Stacy Baker, L.P.N., responded, "You do not currently qualify for BB detail. You can speak with your provider at your MP appt next month." (*Id.*).

Finally, a Medical Detail Special Accommodations document for Johnson dated January 12, 2023, reflects that an "Ice Pack" detail was issued on January 10, 2023 that was set to expire on January 15, 2023, and that he had been issued a "Bottom Bunk" detail that was set to expire on May 12, 2023. (ECF No. 38, PageID.261).[4]

---

[4] Johnson asserts in his motion for partial summary judgment that this medical detail was issued sometime after he was transferred from JCF to the Bellamy Creek Correctional Facility ("IBC") based on a fall from the top bunk he sustained while at IBC. (ECF No. 38, PageID.246) ("Plaintiff was denied a bottom bunk detail by defendants Austin and [Stricklin]. Then shortly [after] Plaintiff was transferred to Bellamy Creek Corr. facility and was placed on a top bunk, where Plaintiff['s] back went out from the higher top bunk, where Plaintiff fell and hurt his neck, back, leg, causing

Johnson, as well as defendants Austin and Stricklin, each move for summary judgment.  Johnson argues that the "undisputed facts establish that defendant[s] Austin and [Stricklin] denied my right to medical care," which the Court construes as a contention that they were deliberately indifferent to Johnson's chronic back pain when they failed to provide treatment.  (ECF No. 38, PageID.244).  Austin and Stricklin each argue that the undisputed record evidence establishes that Johnson was provided with treatment for his back pain, and that his disagreement with their determination that a bottom bunk detail was not medically necessary is insufficient to state an Eighth Amendment violation.  (ECF Nos. 50, 52).

### B.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

---

excruciating pain.  [T]he doctor viewed Plaintiff['s] medical records and the [MSAC] guidelines [] and viewed Plaintiff met the criteria and provided Plaintiff with a bottom bunk detail.").

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

Importantly, a moving party with the burden of proof at trial faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that the party with the burden of proof at trial "must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it."). Specifically, where "the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, No. 1:05-CV-722, 2006 WL 1313863, at *3 (W.D.

12

Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

### C.     Analysis

In his motion, Johnson argues that the "medical records show[] defendants Austin and [Stricklin] [were] conscious and aware of [his] chronic back condition and [knew] [he] ha[d] already [fallen] from a top bunk injuring himself and further injuring himself but refuse[d] to provide a bottom bunk detail to prevent this risk despite [] [his] meeting the criteria of the requirement for a bottom bunk detail."  (ECF No. 38, PageID.245).  To prevail on his Eighth Amendment claim, Johnson must establish that each defendant was deliberately indifferent to his serious medical needs based on that defendant's own actions. To that end, Johnson must satisfy two elements: one objective, and one subjective. Specifically, he must show that he had a serious medical need (the objective prong) and that each defendant, being aware of that need, acted with deliberate indifference to it (the subjective prong).  *See Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010).  As discussed below, Johnson's Eighth Amendment claim against Austin and Stricklin fail on multiple levels.

### <u>Objective Component</u>

As an initial matter, the parties dispute whether Johnson's chronic back condition constitutes a "serious medical need."  (*See, e.g.*, ECF No. 50, PageID.385-86 (Austin's summary judgment motion arguing that a "common backache is not an objectively serious medical need.").  While true that not all back pain qualifies as a serious medical need, the law is clear that sufficient evidence of "extreme pain due to [a] back condition" or "back injury" can constitute an "objectively serious medical condition to survive summary

judgment" on an Eighth Amendment claim. *See, e.g.*, *Murphy v. Grenier*, 406 F. App'x 972, 975 (6th Cir. 2011) ("Under *Estelle* [*v. Gamble*, 429 U.S. 97 (1976)], which also involved inadequate treatment of a back injury, [] [the prisoner] presented sufficient evidence of an objectively serious medical condition to survive summary judgment."). Here, the MDOC records reflect that, sometime in early 2020, Johnson had suffered a "back injury" from a "fall at MCF last year" such that a "medical provider at MCF" assessed it was appropriate to issue a "temporary" two-month detail for a "bottom bunk bed" from August 2020 until October 2020.  (ECF No. 38, PageID.257; ECF No. 40-3, PageID.307; ECF No. 50-1, PageID.395).  Moreover, on June 22, 2021, Austin herself physically examined Johnson during a clinical visit for chronic "lower back pain" and assessed him with "[l]umbago with sciatica, unspecified side" that was "Current" and "Chronic," such that she determined it was appropriate to issue him a medical detail for "[n]o standing or sitting for longer than 4 hours" when working his prison job in the kitchen.  (ECF No. 50-1, PageID.395) ("Patient states history of . . . fall at MCF last year [] that precipitated pain.").  Viewing this evidence in the light most favorable to Johnson, he has, at a minimum, raised a material question of fact that his chronic back condition requiring treatment and temporary medical details is a serious medical need.  *See Murphy*, 406 F. App'x at 975.

However, the law as to the objective component of an Eighth Amendment claim is not as simple as merely showing such a need.  As Austin and Stricklin correctly argue, the Sixth Circuit has recently held that an inmate may not "rely on his serious medical needs alone to establish the objective element of his deliberate-indifference claim," where the

evidence showed that he "received extensive care." *Phillips v. Tangilag*, 14 F.4th 524, 536

(6th Cir. 2021).    Rather, because such an inmate's claim ultimately "challenges the

adequacy of this undisputed care, he must show that the doctors provided grossly

incompetent treatment." *Id.*  And, as Austin and Stricklin correctly argue in their motions,

that "showing" must be made through proper medical evidence:

> To prove [an] objectively serious harm in the health context, prisoners
> must first establish that they have "serious medical needs."  They can
> do so, for example, by showing that a doctor has diagnosed a condition
> as requiring treatment or that the prisoner has an obvious problem that
> any layperson would agree necessitates care.  A serious medical need
> alone can satisfy this objective element if doctors effectively provide no
> care for it.  More frequently, doctors provide some care and prisoners
> challenge their treatment choices as inadequate.   To establish the
> objective element in this common situation, prisoners must show more.
> Objectively speaking, this care qualifies as "cruel and unusual" only if
> it is "so grossly incompetent" or so grossly "inadequate" as to "shock
> the conscience" or "be intolerable to fundamental fairness."  Ordinary
> individuals outside a prison's walls and inmates within those walls both
> face a risk that their doctors will perform incompetently. . . . But mere
> malpractice does not violate the Eighth Amendment.  Only grossly or
> woefully inadequate care – not just care that falls below a professional
> standard – can be called "cruel and unusual."  For prisoners to prove
> grossly inadequate care, moreover, courts generally require them to
> introduce medical evidence, typically in the form of expert testimony.

*Phillips*, 14 F.4th at 534-36 (internal citations omitted).

Because the plaintiff in *Phillips* failed to introduce "expert medical evidence

describing what a competent doctor would have done and why the chosen course was not

just incompetent but grossly so," the Sixth Circuit found that his claim of deliberate

indifference could not "get past the objective stage."   *Id.* at 537 (emphasis added).

Johnson's deliberate indifference claim similarly fails under the *Phillips* standards.

In this case, the medical records make clear that, during the relevant time period at

JCF, Johnson received frequent care for his chronic back condition.  (*See* ECF No. 50-1, PageID.394-421 (multiple chart reviews/updates, clinical visits, physical examinations, treatment plans, and medical details for his chronic back condition between February 2021 through September 2022).  Thus, to the extent Johnson vaguely asserts that he "wasn't provided no medical care and no treatment for [his] chronic back condition" (ECF No. 50-3, PageID.428), such contention is belied by the record evidence, which evidence he does not challenge.

Rather, Johnson's Eighth Amendment deliberate indifference claim clearly challenges the *adequacy* of the undisputed care he received, *i.e.*, that he should have been issued a bottom bunk detail while at JCF.  *Phillips*, 14 F.4th at 536.  But under *Phillips*, the salient question for the objective component is not whether defendants Austin and Stricklin were incompetent or even committed medical malpractice in the care they provided, but whether Johnson presented "expert medical evidence" raising a material factual question that the medical care he received for his chronic back condition, including the denial of his request for a bottom bunk detail, was "so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness."  *Id.* at 537 (quotations omitted) ("In this case, [plaintiff] received substantial care and challenges the medical judgments of medical professionals.").  Johnson fails to get past this aspect of the objective prong of his deliberate indifference claim.

It is first worth noting that Johnson raises claims against both Austin and Stricklin based on the denial of his request for a bottom bunk detail.  However, the evidence is undisputed that Stricklin himself did not have the authority to issue a bottom bunk detail,

16

and that in this case, his involvement was limited to answering Johnson's healthcare kites by referring to Austin's medical determination that Johnson failed to meet the MSAC requirements, and advising Johnson to "discuss the issue at the next [healthcare] appointment with your medical provider."  (ECF No. 38, PageID.255; ECF No. 40-2, PageID.209 (Sricklin's undisputed affidavit attesting that "[u]nder MDOC Policy, bottom bunk details may only be issued by a Medical Provider, as defined in MDOC Policy Directive 04.06.160. [] As a Registered Nurse, I am [a] Qualified Health Professional but not a Medical Provider as defined in MDOC Policy.  [] Evaluating prisoners for, and issuing, bottom bunk details is outside the scope of my authority as a registered nurse and requires a Medical Provider."); ECF No. 40-4, PageID.316 (MDOC Policy defining "Medical Provider" as a "physician, physician assistant, or nurse practitioner.")).  Indeed, the record reflects that other registered nurses also informed Johnson that bottom bunk details can only be written by medical providers if the inmate qualifies under the MSAC guidelines.  (*See, e.g.*, ECF No. 50-1, PageID.393 (Nigel Wyckoff, R.N., responding to Johnson's kite that "Bottom bunk details can only be written by providers and for specific reasons" and that "[a] chart review by your provider has been scheduled.").  Thus, Johnson's failure to state an Eighth Amendment claim against Austin would necessarily mean that he failed to state a claim against Stricklin, and so the Court will focus its discussion on Johnson's claim against Austin, who was the medical provider authorized to determine that it was not medically necessary for him to be issued a bottom bunk detail.

As to whether a bottom bunk detail was medically necessary, the MSAC guidelines provide certain specific requirements for the issuance of a bottom bunk detail, and provide

that even if an inmate meets those requirements, "whether or not a bottom bunk is medically necessary is a decision the provider must make."  (ECF No. 38, PageID.259). While Johnson asserts that he was denied a bottom bunk detail despite "meeting the [MSAC] criteria," his medical records belie his conclusory assertion, as they do not indicate he had "[s]ignificantly impaired mobility or function of an extremity," "[s]ignificantly impaired balance," or a "demonstrated inability to access top bunk due to physical condition."  (*Id.*).[5]

Specifically, the record evidence reflects that, before the incidents at JCF, Johnson had been issued a two-month detail for a "temporary bottom bunk bed" at MCF that expired on October 28, 2020, based on his "history of a back injury six months prior and because he was being evaluated for thyroid cancer at that time."  (ECF No. 38, PageID.257; ECF No. 40-3, PageID.307).  In other words, the medical provider at MCF determined that Johnson would no longer need a bottom bunk detail *after October 28, 2020*, which is significant because it was not until *more than three months after the expiration date of his bottom bunk detail at MCF* that Johnson first kited for a bottom bunk detail at JCF *on February 3, 2021*.  The evidence then shows that Austin denied that request after reviewing Johnson's charts and records and determining that he did not *currently* "meet MSAC guidelines" for a bottom bunk detail in February 2021.  (ECF No. 50-1, PageID.394; *see also* ECF No. 38, PageID.257 ("Review of subsequent documentation fails to reveal any

---

[5] The other "General Requirements" listed appear to be unrelated to a chronic back condition – *e.g.*, "Seizure disorder," "Moderate to complete visual impairment," "Presence of ostomy," etc. – and the "Post-Operative/Special Consideration (Recent Surgeries/Procedures)" exceptions are not pertinent to this case, either.  (ECF No. 38, PageID.259).

reference to significant changes in [Johnson's] status re: his low back pain or his mobility."). Such determination is not inconsistent with the prior assessment of MCF's medical provider that Johnson needed a "temporary" bottom bunk detail only until the end of October 2020.

Subsequent medical records likewise fail to support Johnson's contention that he met the MSAC guidelines for a bottom bunk detail. For instance, on June 22, 2021, Austin examined Johnson during a clinical visit for lower back pain, which revealed that he maintained "Active ROM [range of motion] with lower back flexion, extension, rotation, and lateral bending," and had "[n]egative straight leg lifts bilaterally." (ECF No. 50-1, PageID.395). Not only does this treatment note establish that Austin personally examined Johnson regarding his lower back pain, it also reflects that she exercised her medical judgment as to the treatment he required for his chronic back condition when she issued a different medical detail for "[n]o standing or sitting for longer than 4 hours" during his prison job at the kitchen. (ECF No. 50-1, PageID.395). Significantly, this treatment note does not indicate that Johnson even complained of any bunking issues during this specific clinic visit.

Two examinations by other healthcare providers in July 2021 further corroborate Austin's determination that Johnson did not meet the MSAC guidelines for a bottom bunk. First, on July 9th, Dr. Yarid saw Johnson for back pain, and an exam indicated that Johnson's active range of motion was "grossly intact," albeit "with pain," and he continued to have a "[n]egative straight leg raise." (*Id.*, PageID.398). Shortly thereafter, on July 27th, Johnson was examined by physical therapist Weaver, who assessed that Johnson had

19

a "*mild*" lower back and SI joint irritation with no restrictions in "L-spine" movement, "motion [] without pain," and "5/5" strength in all of his lower extremities. (*Id.*, PageID.400-01) (emphasis added). These records similarly indicate that Johnson was not "significantly impaired" or incapable of accessing the top bunk, and they also include no mention of complaints about issues with bunking, much less a recommendation for a bottom bunk detail based on examinations of Johnson's chronic back condition.

To be sure, the medical record does contain a treatment note dated February 12, 2022, during which Johnson was seen at an urgent care clinic by John Salazar after "hurting his back when getting off bed," and was issued a temporary bottom bunk detail for 5 days. (ECF No. 50-1, PageID.405). But even this treatment note reflects that, while Johnson was "unable to perform *full* [range of motion] during assessment," he otherwise maintained a "steady gait," "ambulated to [healthcare] adlib," and had "no pain/grimace with palpation of back." (*Id.*) (emphasis added). Indeed, based on that examination, Salazar determined it was only medically necessary to issue Johnson a *temporary* bottom bunk detail for *5 days* until February 16, 2022. Thus, Austin's determination one week after its expiration that such temporary detail was no longer necessary on February 23, 2022, based on a review of his charts and medical records amounts to, at most, a disagreement in the prescribed treatment, which fails to rise to the level of a constitutional violation. *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018) ("An inmate's disagreement with the testing and treatment he has received ... does not rise to the level of an Eighth Amendment violation. . . . Nor does a desire for additional or different treatment . . . suffice to support an Eighth Amendment claim.") (quotations omitted); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th

Cir. 2001) ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation."); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan,* 511 U.S. 825, 835 (1994).

Similarly, to the extent Johnson points to evidence indicating that he was issued a bottom bunk detail at IBC sometime in January 2023, this record is dated nearly one year after the last time Austin handled Johnson's bottom bunk request at JCF back in February 2022. And, within that eleven-month span, the medical records reflect that Johnson was healthy enough to play basketball in June through August 2022, and that he sustained new injuries to his knees and shoulder that are unrelated to his back condition while playing basketball. (ECF No. 50-1, PageID.405 (Treatment note dated June 17, 2022, indicating Johnson "injured his left knee playing basketball"), PageID.417 (Treatment note dated August 5, 2022, indicating Johnson "repeatedly bumped left shoulder into another inmate while playing basketball" and has since "had difficulty moving arm outward and painful at night when he sleeps on it.").  Thus, evidence that Johnson was issued a certain medical detail at IBC *almost one year later in January 2023* under different circumstances and in light of new, unrelated injuries is not proper "expert medical evidence" establishing that Austin's prior denial of a bottom bunk detail *in February 2022* fell below a professional standard, much less constituted grossly or woefully inadequate care. *Phillips*, 14 F.4th at 537.

In short, even viewing the evidence in the light most favorable to Johnson, his claims

concerning the denial of his request for a bottom bunk detail amounts at most to a disagreement in the prescribed treatment, which fails to rise to the level of a constitutional violation. *Rhinehart*, 894 F.3d at 740.  Thus, Johnson failed to present evidence sufficient to raise a material question of fact as to whether he can satisfy the objective component of his deliberate indifference claims against Austin or Stricklin.  Accordingly, on this basis alone, summary judgment in both Austin's and Stricklin's favor is appropriate on Johnson's claims.  Necessarily, Johnson's summary judgment motion lacks merit and should be denied. *Arnett*, 281 F.3d at 561; *Calderone*, 799 F.2d at 259.

### **Subjective Component**

While Johnson's failure to satisfy the objective component alone is a sufficient basis to grant Austin's and Stricklin's summary judgment motions, Johnson also fails to raise a material question of fact as to the subjective component.  To satisfy the subjective prong, Johnson must show that each particular defendant possessed "a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles v. Corr. Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).  Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk by failing to take reasonable measures to abate it.  Mere negligence will not suffice.  Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment." *Broyles*, 478 F. App'x at 975 (internal quotations omitted).  As the Sixth Circuit has recognized, these requirements are "meant to prevent the constitutionalization

of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Here, Johnson fails to raise a material factual question as to whether Austin's determination that Johnson did not meet the MSAC guidelines for a bottom bunk detail, and Stricklin's reliance on that determination, amount to more than medical negligence. Austin avers in her affidavit that on the two occasions she handled his bottom bunk detail requests in February 2021 and February 2022, she "reviewed [his] chart documenting that [he] did not qualify for a bottom bunk detail" and "treated him in a manner that [she], in [her] medical judgment, fe[lt] was appropriate" based on his medical charts. (ECF No. 50-2, PageID.422-25). While Johnson avers that he should have received an additional "[e]xamination, x-rays, stuff like that" before denying his requests (ECF No. 50-3, PageID.430), he has presented no expert medical evidence establishing that a review of his charts and medical records was insufficient to make such a determination. Moreover, his medical record contains treatment notes documenting several examinations for his back pain throughout the relevant period, including one performed by Austin herself which led to her issuing him a different medical detail for no sitting or standing for longer than 4 hours. Thus, the mere fact that she determined he did not qualify for an additional bottom bunk detail raises at most a medical negligence claim which cannot satisfy the subjective

prong of the deliberate indifference test.  *Westlake*, 537 F.2d at 860 n.5; *Rhinehart*, 894 F.3d at 740 (6th Cir. 2018); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan,* 511 U.S. 825, 835 (1994).  And, for the same reasons, Johnson fails to show that Stricklin's reliance on Austin's medical determination that he did not need a bottom bunk detail amounts to more than mere medical negligence.

In sum, Johnson failed to present evidence to create a material factual question that he met the subjective component of his Eighth Amendment claim.  Consequently, defendants Austin and Stricklin are entitled to summary judgment on Johnson's claims against them on this basis as well, and Johnson's summary judgment motion should be denied.

## III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Johnson's Motion for Partial Summary Judgment **(ECF No. 38)** be **DENIED**, and that Austin's Motion for Summary Judgment **(ECF No. 50)** and Stricklin's Motion for Summary Judgment **(ECF No. 52)** be **GRANTED**.


Dated: October 30, 2023               s/David R. Grand
Ann Arbor, Michigan                   DAVID R. GRAND
                                      United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to

file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 30, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager